1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| MICHAEL WAYNE RICHMOND, | ) | Case No. EDCV 08-1193 JC |
|---|---|---|
| Plaintiff, | ) | MEMORANDUM OPINION |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

19  **I.   SUMMARY**

20         On September 12, 2008, plaintiff Michael Wayne Richmond ("plaintiff")

21  filed a Complaint seeking review of the Commissioner of Social Security's denial

22  of plaintiff's application for benefits.  The parties have filed a consent to proceed

23  before a United States Magistrate Judge.

24         This matter is before the Court on the parties' cross motions for summary

25  judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26  Court has taken both motions under submission without oral argument.  See Fed.

27  R. Civ. P. 78; L.R. 7-15; September 22, 2008 Case Management Order, ¶ 5.

28  ///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On August 12, 2005, plaintiff filed an application for Disability Insurance

7    Benefits, asserting that he became disabled on October 29, 2000, due to severe

8    depression, panic attacks, anxiety, and chest injury.  (Administrative Record

9    ("AR") 16, 152).  Plaintiff's last insured date was December 31, 2006.[2]  (AR 18).

10   The ALJ examined the medical record and heard testimony from plaintiff,

11   plaintiff's wife, a medical expert, and a vocational expert on January 8, 2008.  (AR

12   16, 388-433).

13   On May 23, 2008, the ALJ determined that plaintiff was not disabled

14   through the date of the decision.  (AR 16-23).  Specifically, the ALJ found:

15   (1) plaintiff suffered from the following severe impairments:  costochondritis of

16   the chest, obesity, degenerative disc disease, a depressive disorder, and a

17   panic/anxiety disorder (AR 18); (2) plaintiff's impairments, considered singly or

18   in combination, did not meet or medically equal one of the listed impairments (AR

19

20   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
21   (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
     Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
22   application of harmless error standard in social security cases).

23

24   [2]In order for plaintiff to be eligible for disability benefits, plaintiff must establish that he
     became disabled and therefore unable to engage in substantial gainful activity prior to the
25   expiration of his insured status.  See 42 U.S.C. §§ 416(i)(2)(C), 416(i)(3)(A); 20 C.F.R.
     § 404.131; see also Vertigan v. Halter, 260 F.3d 1044, 1047 (9th Cir. 2001); Flaten v. Secretary
26   of Health and Human Services, 44 F.3d 1453, 1458 (9th Cir. 1995) (where claimants apply for
     benefits after the expiration of their insured status based on a current disability, the claimants
27   "must show that the current disability has existed continuously since some time on or before the
     date their insured status lapsed").
28

19); (3) plaintiff retained the residual functional capacity to perform light work[3] with certain limitations[4] (AR 20); (4) plaintiff could not perform his past relevant work (AR 21); (5) through the date last insured there were jobs that exist in significant numbers in the national economy that plaintiff could have performed (AR 22); and (6) inconsistencies between plaintiff's allegations and the record reflect "a circumstance somewhat adverse to [plaintiff's] credibility" (AR 20).

The Appeals Council denied plaintiff's application for review.  (AR 5).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

> (1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

---

[3]Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

[4]The ALJ determined that plaintiff has "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following:  able to perform moderately complex tasks; unable to perform work requiring interaction with the general public; unable to operate dangerous machinery, including motorized heavy equipment; and unable to perform work requiring responsibility for the safety of other people."  (AR 20).

(2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales,

4

1  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

2  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

3  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

4         To determine whether substantial evidence supports a finding, a court must

5  "'consider the record as a whole, weighing both evidence that supports and

6  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

7  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

8  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

9  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

10 of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

11 **IV.    DISCUSSION**

12        Plaintiff contends that a reversal or remand is warranted because the ALJ

13 (1) failed properly to consider the opinions of plaintiff's treating physician;

14 (2) failed adequately to develop the record; (3) failed to consider side effects from

15 plaintiff's medication; (4) failed properly to consider lay testimony provided by

16 plaintiff's wife; and (5) failed to consider the impact of plaintiff's obesity on his

17 ability to work.  As discussed in detail below, plaintiff is not entitled to a reversal

18 or remand on any of these grounds.

19        **A.     The ALJ Properly Evaluated the Opinions of Plaintiff's Treating**

20                **Physician**

21        Plaintiff contends that the ALJ erred by failing properly to consider the

22 opinions of plaintiff's treating physician, Dr. Mouna Haddad-Wilson ("Dr.

23 Haddad-Wilson").  (Plaintiff's Motion at 2-5).  Plaintiff's argument lacks merit.

24                **1.     Pertinent Law**

25        In Social Security cases, courts employ a hierarchy of deference to medical

26 opinions depending on the nature of the services provided.  Courts distinguish

27 among the opinions of three types of physicians:  those who treat the claimant

28 ("treating physicians") and two categories of "nontreating physicians," namely

1    those who examine but do not treat the claimant ("examining physicians") and

2    those who neither examine nor treat the claimant ("nonexamining physicians").

3    Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

4    treating physician's opinion is entitled to more weight than an examining

5    physician's opinion, and an examining physician's opinion is entitled to more

6    weight than a nonexamining physician's opinion.[5]  See id.  In general, the opinion

7    of a treating physician is entitled to greater weight than that of a non-treating

8    physician because the treating physician "is employed to cure and has a greater

9    opportunity to know and observe the patient as an individual."  Morgan v.

10   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

11   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

12          The treating physician's opinion is not, however, necessarily conclusive as

13   to either a physical condition or the ultimate issue of disability.  Magallanes v.

14   Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

15   759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

16   contradicted by another doctor, it may be rejected only for clear and convincing

17   reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

18   quotations omitted).  The ALJ can reject the opinion of a treating physician in

19   favor of another conflicting medical opinion, if the ALJ makes findings setting

20   forth specific, legitimate reasons for doing so that are based on substantial

21   evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v.

22   Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out

23   detailed and thorough summary of facts and conflicting clinical evidence, stating

24   his interpretation thereof, and making findings) (citations and quotations omitted);

25   _____

26          [5]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
     draw bright line distinguishing treating physicians from non-treating physicians; relationship is
27   better viewed as series of points on a continuum reflecting the duration of the treatment
     relationship and frequency and nature of the contact) (citation omitted).
28

1  Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to

2  reject a treating physician opinion – court may draw specific and legitimate

3  inferences from ALJ's opinion).  "The ALJ must do more than offer his

4  conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must

5  set forth his own interpretations and explain why they, rather than the

6  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

7  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

8  602 (9th Cir. 1989).

9        Although the treating physician's opinion is generally given more weight, a

10 nontreating physician's opinion may support rejecting the conflicting opinion of a

11 claimant's treating physician.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.

12 1995).  If a nontreating physician's opinion is based on independent clinical

13 findings that differ from the findings of the treating physician, the nontreating

14 physician's opinion may be considered substantial evidence.  Id. at 1041 (citing

15 Magallanes, 881 F.2d at 751).  If that is the case, then the ALJ has complete

16 authority to resolve the conflict.  See Thomas, 278 F.3d at 956-57 (where there is

17 conflicting medical evidence, the Secretary must assess credibility and resolve the

18 conflict) (citation and quotation marks omitted).  On the other hand, if the

19 nontreating physician's opinion contradicts the treating physician's opinion but is

20 not based on independent clinical findings, or is based on the clinical findings also

21 considered by the treating physician, the ALJ can only reject the treating

22 physician's opinion by giving specific, legitimate reasons based on substantial

23 evidence in the record.  Andrews, 53 F.3d at 1041 (citation omitted); see

24 Magallanes, 881 F.2d at 751-52 (substantial evidence that can support the

25 conflicting opinion of a nonexamining medical advisor can include:  laboratory

26 test results, contrary reports from examining physicians, and testimony from the

27 plaintiff that is inconsistent with the treating physician's opinions).

28 ///

7

1

### 2.    Pertinent Facts

2     Dr. Haddad-Wilson was plaintiff's primary care physician beginning in

3 approximately 1997.  (AR 283).  Dr. Haddad-Wilson treated plaintiff for, among

4 other things, depression, anxiety/panic attacks, and insomnia.  (AR 277-78, 280-

5 85, 287, 290-96, 298-99, 372-80, 385-86).[6]  In treatment notes dated February 28,

6 2007, Dr. Haddad-Wilson stated that plaintiff had "severe depression," "insomnia"

7 and "panic attacks," and that plaintiff was "Disabled.  Cannot work."  (AR 377).

8 Dr. Haddad-Wilson's treatment notes for November 28, 2007 also reflect that

9 plaintiff had, *inter alia*, depression, anxiety, and insomnia, and also stated that

10 plaintiff was "100% Disabled.  Cannot work."  (AR 379).

11     On October 11, 2005, Dr. Linda M. Smith, an examining consultative

12 psychiatrist, conducted a psychiatric evaluation of plaintiff.  (AR 333-39).  After

13 examining plaintiff, Dr. Smith opined that plaintiff was (1) not impaired in his

14 ability to understand, remember or complete simple commands; (2) mildly

15 impaired in his ability to understand, remember or complete complex commands;

16 (3) mildly to moderately impaired in his ability to interact appropriately with

17 supervisors, co-workers, or the public; and (4) mildly impaired in his ability to

18 comply with job rules, to respond to change, and to maintain persistence and pace

19 in a normal workplace setting.  (AR 339).  Dr. Smith diagnosed plaintiff with

20 depressive disorder, not otherwise specified and panic disorder.  (AR 338).

21     On October 24, 2005, Dr. K. Gregg, a state agency reviewing psychiatrist,

22 completed a Psychiatric Review Technique form.[7]  (AR 313-26).  Dr. Gregg

23

24          [6]The Administrative Record contains duplicate medical records as follows:  (1) the

25 records at AR 285, 374 and 386 are copies of the same document; (2) the records at AR 287 and
373 are copies of the same document; and (3) the records at AR 290 and 372 are copies of the

26 same document.

27          [7]In a mental residual functional capacity assessment also completed on October 24, 2005,

28 Dr. Gregg opined that plaintiff was moderately limited in his ability to (i) understand, remember

(continued...)

opined that (1) plaintiff had depressive disorder, not otherwise specified (AR 316); (2) plaintiff had mild limitations in activities of daily living, mild difficulties in social functioning, no difficulties in concentration, persistence or pace, and no episodes of decompensation (AR 323); and (3) plaintiff (a) could "sustain simple repetitive tasks with adequate pace and persistence," (b) could "adapt and relate to coworkers and [supervisors]," and (c) could not work with the public.  (AR 313, 331).  Dr. Gregg's opinions were based in part on a review of plaintiff's medical records from Dr. John J. Kohut, a psychiatrist who examined, evaluated and briefly treated plaintiff for major depressive disorder.  (AR 310-12, 331).

At the hearing before the ALJ, Dr. Michael Kania, a medical expert, testified that based on a review of the medical record and an examination of plaintiff at the hearing, plaintiff had major depressive disorder and panic disorder.  (AR 411-12).  Dr. Kania also testified that Dr. Haddad-Wilson's treatment notes lacked specific evidence of any impairment in plaintiff's mental functioning that would support the treating physician's opinions that plaintiff was disabled.  (AR 413).[8]

In his May 23, 2008 decision, the ALJ summarized the medical opinions and evaluations regarding plaintiff's mental impairments provided by, among

---

[7](...continued)
and carry out detailed instructions; and (ii) interact appropriately with the general public.  (AR 327-28).

[8]Dr. Kania testified, in pertinent part:

I of course, reviewed  [Dr. Haddad-Wilson's reports that plaintiff was disabled (AR 379)] and they obviously reflect [Dr. Haddad-Wilson's] opinion.  I . . . guess the . . . difficulty I had was that there was no information in those reports that reflected upon areas of impairment or, . . . what [plaintiff's] daily functioning was like; what things he was capable of doing, those sorts of things.

(AR 413).

others, Drs. Haddad-Wilson, Smith and Gregg, together with "all the evidence," which also included testimony of plaintiff, plaintiff's wife, the medical expert, and the vocational expert at the administrative hearing. (AR 16-23). The ALJ expressly rejected Dr. Haddad-Wilson's November 28, 2007 opinions that plaintiff was "100% Disabled" and "[c]annot work," stating:

> [I]n treatment records dated November 2007, [plaintiff's] treating physician, Dr. M. Haddad [sic], opines that [plaintiff] has been disabled due to his depression (Exhibit 15F/8 [AR 379]). However, this opinion is rejected. In particular, Dr. Haddad is not a psychiatrist. Moreover, at the hearing, the medical expert, Dr. Kania, testified that such an assessment should be rejected, in particular, in consideration of the absence of supporting evidence in related treatment records. Similarly, in assessments dated October 2005, a psychiatric consultative examiner and a State Agency psychiatrist opine that the record supports a finding that [plaintiff] has retained a mental residual functional capacity for a significant range of work-related mental functions (Exhibits 8F/7 [AR 339] and 7F [AR 313-332]).

(AR 21).

### 3.    Analysis

Plaintiff contends that the ALJ improperly rejected Dr. Haddad-Wilson's November 2007 opinions that plaintiff was "100% Disabled" and "[c]annot work."[9] (Plaintiff's Motion at 3-4). The Court concludes that a remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Haddad-

---

[9]To the extent it is plaintiff's position that the ALJ also improperly rejected Dr. Haddad-Wilson's February 28, 2007 opinion that plaintiff was "Disabled. Cannot work" (AR 377), such claim is without merit for the same reasons discussed above.

Wilson's opinions for specific and legitimate reasons supported by substantial evidence.

First, plaintiff fails to demonstrate that Dr. Haddad-Wilson's November 2007 opinions – reached almost a year after plaintiff's insured status expired on December 31, 2006 – bear upon the severity of plaintiff's condition during the period in which he was insured, and thus are even relevant to the instant disability claim.  See Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984) (Evidence of a plaintiff's condition subsequent to the date last insured is relevant if "it may bear upon the severity of [the plaintiff's] condition before the expiration of his or her insured status.") (citations omitted).

Second, the ultimate issue of disability is reserved to the Commissioner, and Dr. Haddad-Wilson's conclusory opinions on such ultimate issue were not binding on the ALJ.  See 20 C.F.R. § 404.1527(e)(1), (3); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).

Third, the ALJ offered a specific and legitimate reason for rejecting Dr. Haddad-Wilson's November 2007 opinions that plaintiff was disabled and could not work.  As the ALJ noted, based on the medical expert's testimony, Dr. Haddad-Wilson did not specify any basis for or functional limitations supporting such opinions.  An ALJ may properly reject a treating physician's opinions that, like here, are conclusory.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinion if it is conclusory and brief and unsupported by clinical findings); Burkhart v. Bowen,

11

1   856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating

2   physicians' opinion which was unsupported by medical findings, personal

3   observations or test reports).

4        Finally, the ALJ properly rejected Dr. Haddad-Wilson's opinions in favor of

5   the conflicting opinions of Dr. Smith, the consultative examining psychiatrist, and

6   Dr. Gregg, the state agency reviewing psychiatrist – each of whom found that

7   plaintiff retained a mental residual functional capacity to perform a range of work-

8   related functions.  Dr. Smith's opinion was supported by such examining

9   psychiatrist's independent clinical findings, and thus constituted substantial

10  evidence upon which the ALJ could properly rely to reject the treating physician's

11  opinions.  See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's

12  opinion on its own constituted substantial evidence, because it rested on

13  independent examination of claimant).  Dr. Gregg's opinions, based in part on the

14  medical findings of Dr. Kohut, were consistent with other record evidence, and

15  therefore also support the ALJ's rejection of Dr. Haddad-Wilson's opinions.  See

16  Andrews, 53 F.3d at 1041 ("[R]eports of [nonexamining physician] . . . may serve

17  as substantial evidence when they are supported by other evidence in the record

18  and are consistent with it.").

19        Accordingly, plaintiff is not entitled to a reversal or remand based upon the

20  ALJ's assessment of Dr. Haddad-Wilson's opinions.

21        **B.    The ALJ Did Not Fail Adequately to Develop the Record**

22        Plaintiff contends that the ALJ failed adequately to develop the record by

23  obtaining mental health records from Dr. Kohut.  (Plaintiff's Motion at 5-6).  The

24  Court disagrees.

25              **1.    Applicable Law**

26        An ALJ has an affirmative duty to assist the claimant in developing the

27  record at every step of the sequential evaluation process.  Bustamante, 262 F.3d at

28  954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has

1  special duty fully and fairly to develop record and to assure that claimant's

2  interests are considered). "The ALJ's duty to develop the record fully is []

3  heightened where the claimant may be mentally ill and thus unable to protect her

4  own interests." Tonapetyan, 242 F.3d at 1150 (citation omitted).   The ALJ's duty

5  is triggered "when there is ambiguous evidence or when the record is inadequate

6  to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d

7  453, 459-60 (9th Cir. 2001) (citation omitted).

8                    **2.    Analysis**

9          Contrary to plaintiff's assertion, the Administrative Record does contain

10  mental health records from Dr. Kohut.  In response to a state agency request, Dr.

11  Kohut provided a 2005 letter and a 2002 narrative report describing the

12  psychiatrist's evaluation and brief treatment of plaintiff, and each such document

13  was made part of the record before the ALJ.  (AR 310-12).  As plaintiff testified at

14  the hearing, Dr. Kohut saw plaintiff for only a brief period of time, and plaintiff

15  stopped seeing Dr. Kohut in October of 2002, well before Dr. Kohut provided

16  plaintiff's medical records contained in the instant record.  (AR 310-12, 382, 384,

17  399-400).  Plaintiff fails to demonstrate that the ALJ had a duty to develop the

18  record any further.

19          Accordingly, a remand or reversal on this basis is not warranted.

20  **C.    The ALJ Did Not Fail Properly to Consider Side Effects of**

21          **Plaintiff's Medication**

22          Plaintiff contends that the ALJ failed properly to consider possible

23  limitations on plaintiff's residual functional capacity related to his use of

24  prescription medication (*e.g.*, Zoloft, and Cyclobenzaprine).  (Plaintiff's Motion at

25  6-9).  The Court disagrees.

26          A claimant bears the burden of demonstrating that his use of medications

27  caused a disabling impairment.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.

28  1985) (claimant failed to meet burden of proving medication impaired his ability

                                    13

1  to work because he produced no clinical evidence).  Here, the only evidence

2  plaintiff points to in support of his contention is statements from his own disability

3  reports – *i.e.* that he experiences dizziness and poor memory from taking Zoloft,

4  and dizziness and an upset stomach from taking Cyclobenzaprine.  (Plaintiff's

5  Motion at 7) (citing AR 128).  Apart from such statements, plaintiff offers no

6  objective evidence that his medication affected him in the way he claims, let alone

7  that it interfered with his ability to work.  Therefore, any failure to address such

8  alleged side effects was not legal error.  See Bayliss v. Barnhart, 427 F.3d 1211,

9  1217 (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the

10  drowsiness side-effect of [plaintiff's] medication" where the ALJ's residual

11  functional capacity assessment accounted for "those limitations for which there

12  was record support that did not depend on [plaintiff's] subjective complaints.");

13  Thomas, 278 F.3d at 960 (alleged side effects need not be considered where no

14  objective evidence supported allegations); Osenbrock v. Apfel, 240 F.3d 1157,

15  1164 (9th Cir. 2001) (ALJ need not consider side effects that were not "severe

16  enough to interfere with [plaintiff's] ability to work."); see also Nyman, 779 F.2d

17  at 531 ("[A] claimant's self-serving statements may be disregarded to the extent

18  they are unsupported by objective findings.").

19      Accordingly, plaintiff is not entitled to a reversal or remand on this basis.[10]

20

21

22  [10]Plaintiff appears to suggest that the ALJ's decision is based on legal error because the
   ALJ failed to consider all possible side effects that can be associated with plaintiff's medication.

23  (Plaintiff's Motion at 7-9).  Plaintiff's argument has no merit.  The ALJ was not required to
   address undocumented medication side effects.  See Miller, 770 F.2d at 849 (ALJ properly

24  rejected allegations of impairment from medication side effects where plaintiff produced no
   clinical evidence that narcotics use impaired his ability to work); Osenbrock, 240 F.3d at 1164.

25  Plaintiff's bare recitation of all possible side effects associated with her medication is
   meaningless absent some evidence that plaintiff suffered any such side effects.  See, e.g.,

26  Schroeder v. Astrue, 2009 WL 3707026, at *5 (C.D. Cal. Nov. 2, 2009) ("[A] simple recitation

27  of potential side effects from a particular medication does not establish that this claimant
   experiences these side effects, which prevents him or her from working for these reasons.")

28  (emphasis in original).

14

### D.   The ALJ Properly Considered Lay Witness Evidence

Plaintiff contends that the ALJ failed properly to consider testimony from plaintiff's wife, Gina Richmond, and failed to provide sufficient reasons for disregarding her statements.  (Plaintiff's Motion at 9-12).  The Court disagrees.

### 1.   Pertinent Facts

At the administrative hearing, plaintiff's wife testified, in pertinent part, to the following:  (i) she and plaintiff had been together for over 20 years; (ii) plaintiff has suffered from depression for a long time; (iii) plaintiff's mental condition has taken "a horrible [physical and emotional] toll" on her; (iv) plaintiff's condition has not improved over the years; (v) plaintiff has panic attacks; (vi) at times plaintiff cannot articulate his feelings; (vii) when she arrives home each day she is unsure what mood plaintiff will be in – sometimes plaintiff is playing music, vacuuming, talking, and moving around, and other times he is in bed with the lights out and a blanket over his head; (viii) plaintiff sometimes locks himself in his room for days or weeks at a time; (ix) she remained married to plaintiff because she feared he would take his life if she left him; and (x) she believes plaintiff is not at any point where he is able to "function on any level." (AR 428-30).

In his decision, the ALJ stated as to the wife's testimony only that "[plaintiff's] wife testified that [plaintiff] has had [mental health] problems for the past 20 years including years in which he had worked as a heavy equipment operator."  (AR 21).

### 2.   Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay

15

1   witness testimony in discussion of findings) (citation omitted); <u>Regennitter v.</u>

2   <u>Commissioner of Social Security Administration</u>, 166 F.3d 1294, 1298 (9th Cir.

3   1999) (testimony by lay witness who has observed claimant is important source of

4   information about claimant's impairments); <u>Nguyen v. Chater</u>, 100 F.3d 1462,

5   1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how

6   impairment affects ability to work is competent evidence and therefore cannot be

7   disregarded without comment) (citations omitted); <u>Sprague v. Bowen</u>, 812 F.2d

8   1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical

9   sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to

10  work).

11         In cases in which "the ALJ's error lies in a failure to properly discuss

12  competent lay testimony favorable to the claimant, a reviewing court cannot

13  consider the error harmless unless it can confidently conclude that no reasonable

14  ALJ, when fully crediting the testimony, could have reached a different disability

15  determination." <u>Robbins</u>, 466 F.3d at 885 (quoting <u>Stout</u>, 454 F.3d at 1055-56).

16                        **3.    Analysis**

17         To the extent the ALJ erroneously failed to discuss particular testimony

18  from plaintiff's wife, any error was harmless.  The ALJ indicated in his decision

19  that he had considered the lay testimony, and identified with particularity the

20  aspects of the wife's testimony that contradicted plaintiff's claims – *i.e.*, that in

21  spite of the fact that plaintiff had the same mental problems for 20 years, he had

22  been able to work at least for some of those years.  (AR 16, 20).  The ALJ was not

23  required to discuss every detail of the wife's statement.  <u>See</u> <u>Black v. Apfel</u>, 143

24  F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not

25  indicate that such evidence was not considered[.]") (citation omitted).  To the

26  extent plaintiff suggests that the ALJ failed expressly to address the other

27  testimony from plaintiff's wife which simply corroborated limitations the ALJ

28  already accounted for in his decision, any error was harmless.  <u>See</u> <u>Zerba v.</u>

1  Commissioner of Social Security Administration, 279 Fed. Appx. 438, 440 (9th

2  Cir. 2008) (failure to address husband's cumulative lay testimony harmless error);

3  Rohrer v. Astrue, 279 Fed. Appx. 437, 437 (9th Cir. 2008) (rejecting claimant's

4  contention that ALJ improperly rejected lay witness statement of claimant's

5  girlfriend where such statement was cumulative of statements by claimant which

6  ALJ accepted).[11]

7         Accordingly, a remand or reversal on this basis is not warranted.

8         **E.    The ALJ Properly Considered Plaintiff's Obesity**

9         Plaintiff claims that the ALJ failed properly to consider plaintiff's obesity

10  during the sequential evaluation process.  (Plaintiff's Motion at 12-15).  Again, he

11  is mistaken.

12         **1.    Applicable Law**

13         In Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit held

14  that an ALJ should consider the effect of the claimant's obesity, in combination

15  with the claimant's other impairments, on the claimant's health and ability to work

16  even where the claimant does not raise the issue.  Id. at 1182.  The Ninth Circuit

17  came to this conclusion for three reasons:  (1) the claimant had implicitly raised

18  the issue of obesity in her report of symptoms; (2) the record clearly showed that

19  the claimant's obesity was at least close to the listing criterion, and was a

20  condition that could exacerbate the claimant's reported illness; and (3) in light of

21  the claimant's *pro se* status, the ALJ's personal observation of the claimant and

22  the information in the record should have alerted him to the need to develop the

23  record on the claimant's behalf.  Burch, 400 F.3d at 682 (citing Celaya, 332 F.3d

24  at 1182).[12]

25

26

27    [11]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1,
2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

28    [12]The claimant in Celaya was four feet five inches or four feet nine inches tall and
weighed between 205 and 213 pounds.  Celaya, 332 F.3d at 1179.  Plaintiff weighed less than the
claimant in Celaya and was at least three inches taller.

1    More recently, in <u>Burch</u>, the Ninth Circuit distinguished its holding in

2    <u>Celaya</u>, finding no reversible error in the ALJ's failure to consider the claimant's

3    obesity at multiple steps of the sequential evaluation process where (i) the

4    claimant was represented by counsel; (ii) the record did not indicate that the

5    claimant's obesity exacerbated the claimant's other impairments (other than

6    possibly her back pain), and (iii) the claimant failed to (a) specify which listing the

7    claimant believed the claimant met or equaled; (b) did not set forth any evidence

8    which would support the diagnosis and findings of a listed impairment; and

9    (c) pointed to no evidence of functional limitations due to obesity which would

10   have impacted the ALJ's analysis.  <u>Burch</u>, 400 F.3d at 682-84.

11        **2.    Analysis**

12        First, plaintiff's assertion that the ALJ failed to consider plaintiff's obesity

13   at step two of the sequential evaluation process is patently without merit.  The ALJ

14   expressly found obesity to be one of plaintiff's severe impairments.  (AR 18).

15        Second, plaintiff has utterly failed to specify which listing he believes he

16   met or equaled based on his obesity and to set forth any evidence which would

17   support the diagnosis and findings of a listed impairment.  Absent any plausible

18   theory as to how his obesity meets or equals a listed impairment, plaintiff fails to

19   establish that the ALJ materially erred at step three.  <u>See Burch</u>, 400 F.3d at 683

20   (A claimant bears the burden of proving that he has an impairment or combination

21   of impairments that meets or equals the criteria of a listed impairment.); <u>Lewis</u>,

22   236 F.3d at 514 (plaintiff must present plausible theory as to how an impairment

23   or combination of impairments equals a listed impairment).

24        Finally, while plaintiff may otherwise quarrel with the thoroughness of the

25   ALJ's assessment of plaintiff's obesity, the Court finds no material error.  Here,

26   unlike in <u>Celaya</u>, at step two the ALJ expressly found plaintiff's obesity to be a

27   severe impairment.  Any failure to make additional references to plaintiff's obesity

28   in the ALJ's decision does not indicate that the ALJ failed to consider such

18

evidence at later steps in the sequential evaluation process . See Black, 143 F.3d at 386.  Moreover, the record does not indicate that plaintiff's obesity exacerbated his other impairments, and plaintiff points to no evidence that he suffered from functional limitations due to obesity, let alone limitations which would have impacted the ALJ's analysis.  Although, as plaintiff points out, Dr. Haddad-Wilson noted on three occasions that plaintiff needed to lose weight (Plaintiff's Motion at 12) (citing AR 374, 375, 379, 386), in such treatment notes she did not diagnose plaintiff as obese or find that plaintiff suffered from any functional limitations due to his weight.  Plaintiff's current speculation that his obesity might have impacted his ability to work does not constitute evidence and falls far short of meeting his burden of proof.  A bare recitation of all possible limitations associated with obesity is meaningless absent some evidence that plaintiff experienced such limitations.

In short, on the facts presented here, plaintiff has failed to show that the ALJ's assessment and findings regarding plaintiff's obesity was erroneous.  See Burton v. Astrue, 310 Fed. Appx. 960, 961 n.1 (9th Cir. 2009) (rejecting plaintiff's assertion that ALJ failed adequately to consider plaintiff's obesity where plaintiff failed to specify how his obesity limited his functional capacity or how it exacerbated his currently existing condition; noting that ALJ's consideration of obesity in overall assessment that plaintiff was capable of working was proper); Hoffman v. Astrue, 266 Fed. Appx. 623, 625 (9th Cir. 2008) (ALJ's failure to consider plaintiff's obesity in relation to residual functional capacity proper because plaintiff failed to show how his obesity in combination with another impairment increased severity of his limitations).[13]

Accordingly, a remand or reversal on this basis is not warranted.

---

[13]As noted above, the Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:    September 3, 2010

_____ /s/ _____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE